STATE of Missouri, Respondent,

v.

Sol NEWSTEAD, Appellant.

No. 44223.

Supreme Court of Missouri.

Division No. 1.

June 13, 1955.

8

No attorney noted for appellant and no brief filed.

John M. Dalton, Atty. Gen., Paul Mc-Ghee, Asst. Atty. Gen., for respondent.

COIL, Commissioner.

Appellant, herein called defendant, was convicted of obtaining a narcotic drug by using a false name and address in violation of Section 195.170. Section references herein, unless otherwise indicated, are to RSMo 1949, V.A.M.S. He was sentenced to two years in the penitentiary in accordance with a jury verdict. He appeared pro se in the trial court and has filed a brief on this appeal.

■ The amended information charged that defendant had been convicted in Indiana of two prior offenses which if committed in this state would have been punishable by imprisonment in the penitentiary. §§ 556.280 and 556.290. It further charged, in substance, that defendant feloniously obtained a prescription for, and feloniously obtained, the narcotic drug prescribed, by the use of a false name and address. We have carefully examined the amended information, and while we are of the opinion that it is inartfully drawn and perhaps subject to successful pre-trial attack, we are satisfied that, considered after verdict, the facts set forth in it sufficiently charged defendant under the provisions of the Habitual Criminal Act, §§ 556.280 and 556.290; sufficiently charged all the essential elements of the offense of obtaining a narcotic drug by the use of a false name and address as provided for in Section 195.170; and set out the constituent facts and circumstances sufficiently to inform defendant of the offense with which he was charged. State v. Crawford, Mo.Sup., 251 S.W.2d 76, 77 [4].

■ The record fails to show an arraignment or plea, but defendant was tried as if he had been arraigned and had entered a plea of not guilty; thus, the failure of the record to show arraignment and entry of a plea is not reversible error. 42 V.A.M.S. Supreme Court Rule 25.04; State v. Schramm, Mo.Sup., 275 S.W.2d 343, 344 [4].

The state's evidence was substantial and sufficient to support the charge of the amended information. On January 31, 1953, defendant appeared at Dr. John G. Kellett's office and represented to the doctor that he was George Lowry residing at 7121 Pennsylvania Avenue. (Defendant had visited the same doctor three days prior to January 31 when he had complained of pain from an "old osteomyelitis" resulting from an accident.) On January 31 defendant told Dr. Kellett that he was again having pain in his leg and that Dr. Kellett's partner, Dr. Eades, had attended defendant at defendant's home and had prescribed dilaudid, an opium derivative and a proper treatment for the condition. (Dr. Eades was out of the city on the 31st and the office records did not indicate such a call by Dr. Eades.) Dr. Kellett prescribed for George Lowry of 7121 Pennsylvania Avenue twelve 1/20-grain dilaudid tablets and gave the signed prescription to defendant. Defendant, representing himself to be George Lowry, obtained twelve 1/16-grain dilaudid tablets by having the prescription filled by a druggist. Dilaudid is a narcotic drug as defined in Section 195.010(13, 14). Defendant was not George Lowry residing at 7121 Pennsylvania Avenue but was Sol Newstead and did not reside at 7121 Pennsylvania Avenue. After his arrest on February 23, 1953, defendant orally stated to police officers that he had used the false name and address "to obtain narcotics."

Section 195.170(1) provides: "No person shall obtain or attempt to obtain a narcotic drug, or procure or attempt to procure the administration of the narcotic drug, by fraud, deceit, misrepresentation, or subter-

fuge; or by the forgery or alteration of a prescription or of any written order; or by the concealment of a material fact; or by the uses of a false name or the giving of a false address."

█ It is clear that the foregoing subsection makes it a separate offense "to obtain a narcotic drug, * * * by the uses of a false name or the giving of a false address." While testimony adduced by the state may not have shown that the prescription was written or filled *because* of the false name or address given by defendant, and it may be that certain of the state's evidence may be construed as tending to show the contrary, still, in view of defendant's admission that he did in fact use a false name and address for the purpose of obtaining a narcotic drug, and in view of the further evidence that he did in fact obtain a narcotic drug under the false name and address admittedly given for the purpose of obtaining it, we are of the opinion that the evidence was sufficient to sustain the essential charge contained in the amended information.

█ Defendant impliedly complains that the proof was insufficient to show that the tablets furnished him were in fact dilaudid. The proof in this respect was not as certain as it could have been. The fact, however, that the druggist testified, without objection, that he filled the prescription which called for 12 dilaudid tablets and gave the tablets to defendant was sufficient, even though on cross-examination it developed that the druggist filled the prescription by removing 12 tablets from a bottle which presumably was received from a drug company which, according to its label, contained dilaudid tablets and that there was no further proof that the tablets furnished were in fact dilaudid tablets.

There is obviously no merit in defendant's contention that the proof failed because the prescription as written called for 1/20-grain tablets and was filled with 1/16-grain tablets. The essential fact was that defendant obtained dilaudid, a narcotic drug, not proved by defendant, § 195.180, to be within any exemption provided for in Section 195.080 of the Narcotic Drug Act.

The state's evidence was sufficient to show one prior conviction of defendant in Indiana under the name of George Willard of the offense of "Fraud And Deceit to Obtain Narcotic Drugs"; defendant's sentence therefor and discharge upon compliance with sentence. Defendant does not here contend that he is not the same person as "George Willard" there convicted; and the jury could have so found from viewing a picture (part of an exhibit) which was attached to a document showing incarceration in, and discharge from, the Indiana State Farm. Defendant's contentions on this aspect of the case seem to be: that inasmuch as the offense of which defendant was priorly convicted was a misdemeanor in Indiana, it was improper to show such as a prior conviction under the Missouri Habitual Criminal Act; that the state's attorney improperly displayed "two rogue's gallery pictures of defendant"; and that it was improper to permit reference to "two former misdemeanors".

█ Fraud and deceit to obtain narcotic drugs as defined by Burns' Indiana Statutes, Section 10–3535, is, and was at trial time, essentially the same offense as one of those defined by Section 195.170(1) RSMo 1949, V.A.M.S. That offense is made a felony in Missouri by Section 195.200 (and was a felony in 1945, the time of the Indiana offense), and is and was punishable in Missouri by imprisonment in the penitentiary. The fact that at the time of the prior offense, such was a misdemeanor in Indiana is of no significance. This, because Section 556.290 provides that one who has been convicted of an offense in another state which if committed in this state would be punishable in this state by imprisonment in the penitentiary shall be subject to the punishment prescribed for habitual criminals. Nor does the fact that defendant's punishment in Indiana was not imprisonment in the penitentiary prevent prosecution under the Habitual Criminal Act. State v. Foster, Mo.Sup., 251 S.W.2d 675, 677 [2–4].

■ The record does not disclose anything about "parading rogue's gallery" pictures other than, as indicated, the fact that a picture, presumably displayed to the jury, was attached to the Indiana State Farm records. This picture was properly admitted and viewed by the jury as tending to prove that the George Willard convicted in Indiana was the same person as instant defendant. The record does not contain the closing arguments of counsel. And we find no improper reference in the record before us to "two former misdemeanors."

■ Defendant contends that the trial court erred in refusing to issue subpoenas for defense witnesses. The record shows that the trial court arranged for, or offered to arrange for, either by subpoena or otherwise, the presence of every witness requested by defendant. In one instance defendant wanted to show that, contrary to the testimony of the druggist who testified for the state, there were "blank tablets" the same size and shape as 20 other tablets. Defendant stated in the subpoena that he wanted as a witness any chemist connected with certain pharmaceutical companies. Obviously such a subpoena could not have been effectively issued or served but, in any event, the state stipulated that a witness called from either of two pharmaceutical companies would testify to the facts (as to "blank tablets") as stated by defendant.

■ Defendant's contention that the trial court was without jurisdiction is without merit. The offense charged was a felony, § 195.200, of which the circuit court had jurisdiction. We think defendant means that he was entitled to discharge under the provisions of Sections 545.890–545.920. The record shows that defendant was arrested on February 23, 1953; that an amended information, on which defendant was tried, was filed September 18, 1953; that an original information was filed during the April term, 1953; that defendant's trial commenced on December 21, 1953. The terms of the St. Louis City Circuit Court begin on the first Mondays of February, April, June, and December, and on the second Monday of September.

It appears, therefore, that defendant was tried at the first term succeeding the one at which the amended information was filed, and, at the third term after the original information was filed (properly excluding for the purpose of such computation the April term at which the original information was filed, State v. Wigger, 196 Mo. 90, 94, 93 S.W. 390, 391). It follows that, irrespective of a consideration of other relevant matters, defendant was in no event entitled to discharge under the provisions of Sections 545.890–545.920.

■ Defendant's contention that the trial court's failure to grant a pre-trial conference was prejudicial to him is wholly refuted by the record. The trial court carefully inquired as to the desirability of such a conference and correctly concluded that such could accomplish nothing of substance.

■ Defendant contends that he was prejudiced by the trial court's inquiry as to defendant's "true name" which defendant says was made in a "sarcastic and prejudicial manner." The record shows that in order to satisfy himself that defendant, who had requested that he be permitted to represent himself, understood that he had the right to counsel and was knowingly refusing that right, the trial judge opened the inquiry by asking: "Is your true and correct name Sol Newstead? A. That is the name I have been going under for years, changed from Sol Neistat. "Q. What is your correct name? A. Newstead, N-e-w-s-t-e-a-d." The record, of course, does not disclose the trial court's "manner" in putting these questions, but it is apparent from the ensuing inquiry that no possible prejudice to defendant resulted from the questions about which complaint is here made.

Defendant says that the assistant circuit attorney held "repeated whispered consultations with the court during the progress of the trial" which could not be heard by the reporter, the jury, or the defendant. Nothing in the record supports this contention

nor does defendant allege that he was prejudiced by such, even if it occurred.

Contrary to defendant's contentions, it appears that defendant was not denied the right to make a closing argument; that the trial court did instruct on reasonable doubt; and that defendant was not entitled to an instruction on the "subject of * * * good character". State v. Pine, 332 Mo. 314, 322, 57 S.W.2d 1087, 1090 [9, 10].

The verdict of the jury was in part, "We, the jury in the above entitled cause, find the defendant guilty of procuring drugs by means of fraud, as charged, * * *." Now, we have held that the amended information did not charge defendant with fraud or deceit in obtaining narcotic drugs (although such could have been charged under the same first subdivision of Section 195.170, as obtaining a narcotic drug by use of a false name and address was charged). On the contrary, the amended information charged defendant with obtaining a narcotic drug by the use of a false name and address. The proof supported that charge. The trial court's main instruction did not clearly confine itself to the charge of obtaining a narcotic drug by use of a false name and address, but contained much that was surplusage. We believe, however, that, in the absence of a specific attack, the instruction was sufficient to submit the charge contained in the amended information, in that it required the jury to find facts which were tantamount to a finding that defendant had obtained a narcotic drug by the use of a false name and address. The verdict was not technically responsive to the charge in the amended information and the court's main instruction, taken in connection with the fact that the same subdivision of the statute under which defendant was charged also defines the offense of obtaining a narcotic drug by fraud and deceit, casts some doubt upon the validity of the verdict. We have concluded, however, upon a review of the whole record, that it is clear enough that the jury intended to and did find defendant guilty of obtaining a narcotic drug by the use of a false name and address as charged in the amended information. No objection was made to the verdict at the time it was returned or in the motion for new trial. In construing a verdict, the "controlling object is to ascertain the intent of the jury." State v. Perry, Mo.Sup., 233 S.W.2d 717, 720 [3-5]. We think the entry of judgment on the verdict rendered would bar a further prosecution for the same offense, and that no manifest injustice will result by our holding that the verdict is valid. State v. Saussele, Mo.Sup., 265 S.W.2d 290, 294 [5-9].

Defendant was present throughout the trial. The punishment assessed was as prescribed by law. Defendant was accorded allocution, and the judgment and sentence conformed to the requirements of law.

The judgment is affirmed.

VAN OSDOL and HOLMAN, CC., concur.

PER CURIAM.

The foregoing opinion by COIL, C., is adopted as the opinion of the court.

All concur.